IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RICHARD LESTER, :
:
    Plaintiff :
: CIVIL NO. 1:CV-14-1046
    v. :
: (Judge Caldwell)
MR. ROSATO, *et al.*, :
:
    Defendants :

*M E M O R A N D U M*

I. *Introduction*

Plaintiff, Richard Lester, formerly an inmate at the state correctional institution in Frackville, Pennsylvania, initiated this action on May 14, 2014. He filed an Amended Complaint on October 7, 2014. (Doc. 27). Named as defendants are the following prison employees: Unit Manager Rosato; Sgt. Brown; Sgt. Whitesaw; Corrections Officer (CO) Santangelo; CO Hysock; CO Montoya and CO Thomas.

This matter is before the court on Defendants' partial motion to dismiss the Amended Complaint. (Doc. 36). Lester has not filed an opposition brief.[1] For the reasons set forth below, the motion will be granted in part and denied in part. Lester will be granted the opportunity to file a second amended complaint.

---

[1] On October 4, 2014, Lester advised the court he would be released from custody on November 24, 2014. He also provided his anticipated mailing address. *See* Doc. 25. Defendants' certificate of service on their partial motion to dismiss indicates that their documents were mailed to Lester at the address he gave. *See* Doc. 36, ECF p. 3. In addition to not filing an opposition brief, Lester has not contacted the court since his release.

II. *Standard of Review*

A motion to dismiss under Fed. R. Civ. P 12(b)(6) authorizes the dismissal of a complaint "for failure to state a claim upon which relief can be granted." Under Fed. R. Civ. P. 12(b)(6), the district court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff is entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008)). While a complaint need only contain "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), and detailed factual allegations are not required, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570, 127 S.Ct. at 1974. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)(quoting *Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965). Formulaic recitations of the elements of a cause of action will not suffice. *See Id.* "[L]abels and conclusions" are not enough, and a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1965.

With this standard in mind, the following is the background to this litigation, as Plaintiff alleges it.

III. *Background*

Prior to March 21, 2012, inmate Andrew Simmons held a Z Code housing status due to his tendency to commit violent acts against other inmates. (Doc. 27, ECF p. 2). A Z Code designation means that the inmate should not be housed with other inmates. Mr. Rosato was the Unit Manager (UM) for Lester's housing unit on that date. (*Id.*, ECF p. 3). On March 21, 2012, Sgt. Brown ordered Plaintiff Lester to move into inmate Simmons' cell. Inmate Simmons allegedly told UM Rosato and Sgt. Brown "he would seriously injure any inmate that was placed in the cell with him." (*Id.*) Lester told Sgt. Brown that "Simmons threatened to physically injury him" if he moved into Simmons' cell. (*Id.*) Sgt. Brown acknowledged Simmons' Z Code status and threatened to issue Lester a misconduct if he failed to double cell with Simmons. Sgt. Brown assured Lester "that he would not be in the cell with Simmons very long." (*Id.*)

Over the next four days, Lester reported to Corrections Officer (CO) Hysock that he needed to be immediately relocated to a different cell because "Simmons threatened to kill him." (*Id.*) Lester also sent several Request to Staff forms to both UM Rosato and Sgt. Brown "expressly stating that Simmons threatened to physically injury him" and simultaneously requesting to be immediately removed from the cell. (*Id.*) Both UM Rosato and Sgt. Brown told Lester "to be patient." (*Id.*) Lester was required to double cell with inmate Simmons until March 26, 2012.

At approximately 4:30 a.m., on March 26, 2012, Simmons attacked Lester by punching, kicking and stabbing him repeatedly with a homemade weapon. The assault

-3-

lasted approximately thirty minutes. (*Id.*, ECF p. 4). An unidentified corrections officer removed Lester from the cell, handcuffed him and transferred him to the Restricted Housing Unit (RHU). While in the RHU, Lester was issued a misconduct for Fighting, a Class I misconduct, by an unidentified staff member. (*Id.*)

On March 29, 2012, Lester was found guilty of fighting and ordered to serve forty-five days in the RHU under disciplinary custody. He was released from the RHU on May 9, 2012, and returned to general population. (*Id.*)

Lester sustained numerous stab wounds, lacerations and abrasions during the attack which have left him permanently physically and mentally scarred. In June 2012, Lester was diagnosed with post traumatic stress disorder (PTSD) because of the assault by Simmons. (*Id.*)

On August 30, 2012, CO Hysock gave Lester an inmate grievance form which he used to present the issues surrounding his attack by Simmons and his own request for a Z Code due to his PTSD. (*Id.*) Later that afternoon, when Lester was returning from yard, he approached CO Thomas and told him he was experiencing diabetic symptoms and that he needed his medically prescribed diabetic snack. (*Id.*, ECF p. 5). Lester then discovered someone had removed his diabetic snack from the bag and replaced it with a bar of soap, and placed the snack bag on his bed. (*Id.*) CO Thomas told Lester that CO Montoya, "was the culprit who tampered with his medically prescribed diabetic snack bag." (*Id.*) CO Thomas then told Lester to report to CO Montoya. CO Montoya "laugh[ed] about this practical joke that he perpetrated." (*Id.*)

Lester then went to the officer's booth to speak with Sgt. Whitesaw about replacing his diabetic snack. (*Id.*) CO Montoya approached Lester from behind and handcuffed him to the bars encasing the officer's booth. CO Montoya unzipped his own pants, exposing his genitals and demanded Lester "show him his nipples while simulating masturbation." (*Id.*) Meanwhile CO Hysock, CO Thomas, Sgt. Whitesaw and CO Santangelo all laughed until Lester responded "that this was not going to be so funny when the Lieutenant walks in." (*Id.*) Sgt. Whitesaw then tossed CO Montoya a set of handcuff keys to release Lester. Sgt. Whitesaw, CO Hysock and CO Santangelo all "desperately pleaded with plaintiff not to report this incident because they were involved in a similar incident wherein they were disciplined for unlawfully handcuffing a fellow corrections officer, and because they were concerned that they would be terminated if plaintiff reported it." (*Id.*, ECF pp. 5-6). Lester reported this incident to various institutional staff members and the Department of Corrections' (DOC) sex abuse hotline. (*Id.*, ECF p. 6).

Neither Sgt. Whitesaw, CO Hysock, CO Thomas, CO Montoya nor CO Santangelo reported the August 30, 2012, incident to their supervisors. (*Id.*, ECF p. 7). As a result of these defendants' actions, Lester suffered intense anxiety, embarrassment, humiliation, and worsening PTSD symptoms. (*Id.*)

Lester outlines the following claims: (1) defendants Rosato, Brown and Hysock failed to protect him from harm when they housed him with Simmons who had a Z Code, and threatened to injure anyone housed with him, and then failed to remove Lester from the cell once he reported Simmons had threatened to harm him; (2) defendants

-5-

Rosato, Brown and Hysock used excessive force against him after he was attacked by inmate Simmons; and (3) defendants Rosato, Brown and Hysock issued him a false misconduct for fighting to cover up their unlawful conduct; (4) defendants Whitesaw, Hysock, Thomas, and Santangelo failed to protect him from Montoya's use of excessive force; and (5) CO Montoya used unnecessary and excessive force against him and subjected him to cruel and unusual punishment when he handcuffed him to the bars of the block officer's office. (*Id.*)

IV. *Discussion*

Defendants Rosato, Brown, Whitesaw, Santangelo, Hysock, Thomas and Montoya have filed a partial motion to dismiss, seeking to dismiss the following claims: (1) the excessive-force claim against Rosato, Brown and Hysock for the force they used against him after he was attacked by his cell mate Simmons; (2) the due process claim against Rosato, Brown and Hysock for filing a false-misconduct report against him; (3) the claim of excessive force and cruel and unusual punishment based on CO Montoya's actions; (4) the claim of verbal sexual harassment; (5) the conspiracy claim against Whitesaw, Hysock, Thomas, Santangelo and Montoya; and (6) failure to state a claim against Whitesaw, Santangelo, and Thomas. Defendants are not seeking to dismiss Lester's failure-to-protect claim against Rosato, Brown and Hysock related to their decision to double cell him with Simmons, or the claim based on their failure to remove him from the cell once they learned of Simmons' threats to kill Lester.

A. *Lester Fails to State an Excessive-Force Claim against Rosato, Brown and Hysock*

The Eighth Amendment protects an inmate from a correctional officer's use of excessive force. *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000). "The core inquiry of an excessive-force claim is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Fennell v. Cambria Cnty. Prison,* 607 F. App'x 145, 148 (3d Cir. 2015)(nonprecedential)(quoting *Wilkins v. Gaddy*, 559 U.S. 34, 37, 130 S.Ct. 1175, 1178, 175 L.Ed.2d 995 (2010)). The reasonableness of a particular use of force is often dependent upon factual context and must be "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386-87, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443 (1989). "[N]ot 'every malevolent touch by a prison guard gives rise to a federal cause of action.'" *Wilkins*, *supra*, 559 U.S. at 37, 130 S.Ct. at 1178 (quoting *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S.Ct. 995, 1000, 117 L.Ed.2d 156 (1992)).

"The relevant factors for a court to consider are: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response." *Giles v. Kearney*, 571 F.3d 318, 328 (3d Cir. 2009)(citing *Brooks, supra,* 204 F.3d at 106). Although the extent of injury is relevant, the inmate does not need to sustain serious injury to state an excessive-force claim. *Wilkins,* 559 U.S. at 36-38, 130 S.Ct. at 1178-1179.

Lester alleges that defendants Rosato, Brown and Hysock "maliciously us[ed] unreasonable and excessive force before, during, or after the Plaintiff was attacked by inmate Simmons." (Doc. 27, ECF p. 7). Lester was removed from his cell in the early morning hours of March 26, 2012, after his physical encounter with inmate Simmons. (*Id.*, ECF p. 4)("[A]t approximately 5:00 a.m., at which time the plaintiff was handcuffed and placed in the Restrictive Housing Unit" by an unidentified "third shift officer").

As defendants point out, there are absolutely no factual allegations in the Amended Complaint alleging that defendants Rosato, Brown or Hysock were present when Lester was extracted from his cell on March 26, 2012, or that he was even physically injured by any corrections staff member, let alone by Rosato, Brown or Hysock. Personal involvement in the alleged wrongdoing is necessary for the imposition of liability in a civil rights action. *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005); *Sutton v. Rasheed*, 323 F.3d 236, 249-50 (3d Cir. 2003). Section 1983 liability cannot be predicated solely on *respondeat superior. Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); *Rode v. Dellarciprete*, 845 F.2d 1195,1207 (3d Cir. 1988). As there are no factual allegations supporting Lester's excessive-force claim against Rosato, Brown or Hysock, this claim will be dismissed due to Lester's failure to allege their personal involvement in this claim. However, Lester will be given leave to amend this claim.

B. *Lester's Due Process Claim against Rosato, Brown and Hysock for the Issuance of an Allegedly False Misconduct*

Plaintiff alleges Rosato, Brown and Hysock violated his due process rights when he was issued a false "misconduct for fighting in an attempt to cover up the defendants's above-mentioned unlawful conduct." (Doc. 27, ECF p. 7).

Plaintiff fails to state a claim for three reasons. First, allegations of false misconduct reports, without more, do not state a due process claim. *Smith v. Mensinger*, 293 F.3d 641, 653 (3d Cir. 2002); *Thomas v. McCoy*, 467 F. App'x 94, 96 n.3 (3d Cir. 2012)(nonprecedential); *McCullough v. Miller*, 330 F. App'x 330, 333 (3d Cir. 2009)(nonprecedential). *See also Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986)("The prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest."). To invoke due process, the inmate must allege that one of the due process rights he has in prison disciplinary proceedings was violated. See *Mensinger*, 293 F.3d at 654 ("so long as certain procedural requirements are satisfied, mere allegations of falsified evidence or misconduct reports, without more, are not enough to state a due process claim").[2]

Second, a prisoner's due process rights are not triggered unless the disciplinary action results in the loss of good-conduct time or when the penalty "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison

---

[2] *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d (1974), lists the inmate's due process rights. There must also be "some evidence" supporting the decision-maker's findings. *McGee v. Scism*, 463 F. App'x 61, 63 (3d Cir. 2012)(nonprecedential).

life." *Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995). Lester avers he spent forty-five days in disciplinary segregation. (Doc. 27, ECF p. 4). This length of disciplinary confinement does not by itself constitute an "atypical and significant hardship" under *Sandin,* 515 U.S. at 486, 115 S.Ct. at 2301. *See Mensinger*, *supra*, 293 F.3d at 654 (seven months' disciplinary confinement "does not, on its own, violate a protected liberty interest as defined in *Sandin*"); *Griffin v. Vaughn*, 112 F.3d 703, 706 (3d Cir. 1997)(fifteen months in segregation was not an atypical and significant hardship).

Third, there are no allegations in the Amended Complaint that any of the named defendants issued Lester the misconduct for fighting with Simmons. (*Id.*, ECF p. 4). The lack of personal involvement defeats the claim. In sum, Lester fails to state a due process claim against Rosato, Brown or Hysock. Further, since Plaintiff's disciplinary confinement was not atypical or significant, amendment of this claim would be futile. *See Shelley v. Patrick*, 481 F. App'x 34, 36 (3d Cir. 2012)(nonprecedential). Thus, Lester will not be granted leave to amend the due process claim.

C. *Lester's Claims of Verbal Abuse*

Lester's Amended Complaint alleges verbal abuse, including verbal abuse that is sexual in nature. Mere verbal abuse, even abuse involving racial or sexual harassment, is not actionable as a civil-rights claim. *Dunbar v. Barone*, 487 F. App'x 721 (3d Cir. 2012)(nonprecedential)("[V]erbal threats or taunts, without more, are not sufficient to constitute a violation of the Eighth Amendment," also noting that racial harassment by mimicking Ku Klux Klan hoods failed to state a claim ); *Robinson v. Taylor*, 204 F. App'x

-10-

155, 156 (3d Cir. 2006)(nonprecedential)(inmate claiming correctional officers made racial and sexual comments toward him failed to state an Eighth Amendment claim). Accordingly, any claim of verbal abuse will be dismissed, and since amendment would be futile, without leave to amend.

   D.   *Lester's Eighth Amendment Claims against Hysock, Whitesaw, Thomas, Santangelo and Montoya*

Plaintiff alleges that CO Montoya approached him from behind and handcuffed him to "the bars encasing the officer's booth," then unzipped his own pants, exposing his genitals, and then "demanded that Plaintiff show him his nipples while simulating masturbation." (Doc. 27, ECF p. 5). While this was happening, Sgt. Whitesaw, CO Hysock, CO Santangelo and CO Thomas watched and laughed. (*Id.*).

"[S]exual abuse of a prisoner by a corrections officer may in some circumstances violate the prisoner's right to be free from cruel and unusual punishment under the Eighth Amendment. *Boddie v. Schnieder*, 105 F.3d 857, 860-61 (2d Cir. 1997); *see also Frietas v. Ault*, 109 F.3d 1335, 1338 (8th Cir. 1997)("because the sexual harassment or abuse of an inmate by a corrections officer can never serve a legitimate penological purpose and may well result in severe physical and psychological harm, such abuse can, in certain circumstances" give rise to an Eighth Amendment claim). "Rape, coerced sodomy, unsolicited touching of women prisoners' vaginas, breasts and buttocks by prison employees are 'simply not part of the penalty that criminal offenders pay for their offenses against society.'" *Schwenk v. Hartford*, 204 F.3d 1177, 1197 (9th Cir.

-11-

2000)(citations omitted). Uninvited sexual contact that is done maliciously and sadistically to cause harm and that does not advance any legitimate penological interest is the type of conduct that is "inconsistent with contemporary standards of decency" and that is "repugnant to the conscience of mankind," and thus violates the Eight Amendment. *Id.* at 1196-97.

Defendants argue that under 42 U.S.C. § 1997e(e) Plaintiff cannot recover because he suffered no physical injury. Section provides that "[n]o Federal civil action may be brought by a prisoner . . . for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). We disagree. When a request for damages stems from a violation of a prisoner's constitutional rights, "and not from any emotional or mental distress suffered therefrom, those claims are not claims brought 'for mental or emotional injury suffered' and are not barred by § 1997e(e)." *Allah v. Al-Hafeez*, 226 F.3d 247, 252 (3d Cir. 2000). Thus, a claim seeking damages for a violation of the Eighth Amendment alleging sexual abuse is not prohibited by Section 1997e(e).

Defendants contend that Lester fails to state an Eighth Amendment claim against these defendants because he was not handcuffed "for a lengthy period of time, nor does it appear the handcuffs were tightly placed on Lester's wrists. Lester does not allege he suffered an injury from Montoya's actions." (Doc. 37, Br. in Supp. Mot. to Dismiss, ECF p. 10). The court is not persuaded by this argument in light of the allegations of the Amended Complaint. Here, Lester alleges that Hysock, Whitesaw, Thomas, Santangelo and Montoya violated his Eighth Amendment rights by subjecting him to conduct that

-12-

involved the use of force for non-legitimate purposes that was sexually harassing in nature. (Doc. 27, ECF p. 5). Lester has stated an Eighth Amendment claim against CO Montoya. *See Schwenk,* 204 F.3d at 1197 (Eighth Amendment is violated when an inmate endures verbal sexual harassment from prison guards plus physical sexual assault or threats of physical sexual assault).

As for the other defendants who are alleged to have witnessed this event, Lester claims they failed to intervene in CO Montoya's assaultive behavior. "[A] corrections officer's failure to intervene in a beating can be the basis of liability for an Eighth Amendment violation under § 1983 if the corrections officer had a reasonable opportunity to intervene and simply refused to do so." *Mensinger*, 293 F.3d at 650. In addition, it is clear "that a corrections officer can not escape liability by relying upon his inferior or non-supervisory rank vis-a-vis the other officers." (*Id.*) Accordingly, to state a valid cause of action in a case where an inmate claims an officer had a duty to take reasonable steps to protect a victim from another officer's use of force, the inmate must prove that (1) the officer had a duty to intervene; (2) the officer had the opportunity to intervene; and (3) the officer failed to intervene. *Id.* at 650-51; *see also Knox v. Doe,* 487 F. App'x 725, 728 (3d Cir. 2012)(nonprecedential).

Taking the allegations of the Amended Complaint as true, as we must, Lester claims that Sgt. Whitesaw, CO Thomas, CO Santangelo and CO Hysock were present when CO Montoya handcuffed him to the bars of the officer's area, laughed at the situation, and only when Lester stated "that this is not going to be so funny when the Lieutenant

walks in," does Sgt. Whitesaw "toss" CO Montoya a handcuff key "telling him to remove the handcuffs." (Doc. 27, ECF p. 5). At this stage of the case, Lester has sufficiently pled sufficient factual content that would allow the court to draw the reasonable inference that Sgt. Whitesaw, CO Thomas, CO Stantangelo and CO Hysock failed to intervene.

Defendants' motion to dismiss Lester's Eighth Amendment claims against CO Montoya, Sgt. Whitesaw, CO Thomas, CO Santangelo and CO Hysock will be denied.

E. *Lester's § 1983 Conspiracy Claim against Whitesaw, Hysock, Thomas, Santangelo and Montoya*

"To make out a conspiracy claim under § 1983, [Plaintiff] must show that 'persons acting under color of state law conspired to deprive him of a federally protected right.' As a threshold matter, however, a § 1983 conspiracy claim only arises when there has been an actual deprivation of a right." *Perano v. Twp. of Tilden*, 423 F. App'x 234, 239 (3d Cir. 2011)(nonprecedential) (quoting *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 254 (3d Cir. 1999)). A conspiracy claim requires more than mere speculation as to an agreement. Plaintiff must provide "specific allegations of 'combination, agreement, or understanding among all or between any of the defendants to plot, plan or conspire to carry out the challenged conduct." *Marchese v. Umstead*, 110 F. Supp. 2d 361, 371 (E.D. Pa. 2000); *see also Wood v. Williams*, 568 F. App'x 100, 107 (3d Cir. 2014) (nonprecedential).

Although Lester charges defendants Whtiesaw, Hysock, Thomas, Santangelo and Montoya with "conspiring to violate the rights, privileges, or immunities guaranteed to Plaintiff by the Constitution and laws of the United States, and the laws of Pennsylvania,"

(Doc. 27, ECF p. 8), he does not state a cognizable conspiracy claim because he makes no particularized allegations of any alleged conspiracy. The factual allegations of Lester's Amended Complaint do not support a plan or agreement of the defendants to conspire or engage in a corrupt plot to violate his civil rights. Therefore, this claim will be dismissed without prejudice, and with leave to amend.

    F.    *Leave to Amend*

"[I]f a complaint is vulnerable to [Rule] 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 236. In this case, any amendment to Lester's Due Process claims against Rosato, Brown and Hysock would be futile. However, with respect to Lester's excessive-force claim against Rosato, Brown and Hysock and his conspiracy claim against Whitesaw, Hysock, Thomas, Santangelo and Montoya, it may be possible that Lester could remedy the deficiencies identified in these claims by amendment. If desired, Plaintiff may file a second amended complaint and should provide more facts about these claims if he elects to pursue them.

    Plaintiff will be granted twenty-one days to file a second amended complaint. If he decides to file an amended complaint, he is advised that it must contain the same docket number as the instant action and should be labeled "Second Amended Complaint." In addition, the "second amended complaint must be complete in all respects. It must be a new pleading which stands by itself as an adequate complaint without reference to the complaint already filed." *Young v. Keohane*, 809 F. Supp. 1185, 1198 (M.D. Pa. 1992).

Consequently, all causes of action alleged in the first amended complaint which are not alleged in the second amended complaint are waived. Therefore, if Lester seeks to continue with his failure to protect and sexual harassment/abuse, and failure-to-intervene claims against the various defendants, he must include these claims and supporting allegations in his second amended complaint.

Plaintiff is also advised that his second amended complaint must be concise and direct. *See* Fed. R. Civ. P. 8(d). Each allegation must be set forth in an individually numbered paragraph in short, concise and simple statements. *Id.* The allegations should be specific as to time and place, and should identify the specific person or persons responsible for the deprivation of his constitutional rights and what each individual did that led to deprivation of his rights. *Iqbal*, 556 U.S. at 676, 129 S.Ct. at 1948. He also shall specify the relief he seeks with regard to each claim. Plaintiffs' failure to file an appropriate second amended complaint within the required time will result in this action proceeding only on Lester's failure-to-protect claim against Rosato, Brown and Hysock and his Eighth Amendment claims against Whitesaw, Hysock, Thomas, Santangelo and Montoya.

Finally, Lester is cautioned that now that he is released, he is to update his address with the court whenever he moves. If the court is unable to communicate with him due to his failure to provide an accurate address, Lester's action will be subject to dismissal.

We also entertain the possibility, based on the fact that Plaintiff did not file a brief in opposition to Defendants' motion to dismiss, that Plaintiff no longer wishes to

pursue this action.  Therefore, if Plaintiff does not file a second amended complaint, he will be directed to file with the court a notice that he either: (1) no longer wishes to pursue this action; or (2) wishes to pursue this action but only on the claims that have survived the motion to dismiss.  If Plaintiff does not file the notice, this action will be dismissed with prejudice.

   An appropriate order follows.

                <u>/s/ William W. Caldwell</u>
                William W. Caldwell
                United States District Judge

Date: August 25, 2015